USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___12/5/2024___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRENCE LEE,

                      Plaintiff,

        -against-

JUAN ALBARRAN a/k/a JOHN
ALBARRAN, FRITZ KUNDRUN,
AMERICAN METALS & COAL
INTERNATIONAL, INC., AMCI
HOLDINGS, INC., and 106 TRIPP
PROPERTY LLC,

                    Defendants.

23-cv-11215 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Terrence Lee ("Plaintiff") initiated this action on December 27, 2023, seeking redress for claims of assault, battery, intentional infliction of emotional distress, negligence, negligent hiring, retention or supervision, and negligent infliction of emotional distress against Defendants Juan Albarran a/k/a John Albarran ("Albarran"), Fritz Kundrun ("Kundrun"), American Metals & Coal International, Inc. ("AMCI"), AMCI Holdings, Inc. ("AMCI Holdings") (together, with American Metals & Coal International Inc., "AMCI Defendants"), and 106 Tripp Property LLC ("106 Tripp").

      Presently before the Court are Defendants Kundrun, AMCI Defendants, and 106 Tripp's (all together, the "Defendants") Motions to Dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). For the following reasons, Defendants' Motions to Dismiss are GRANTED without prejudice.

**BACKGROUND**

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to the Plaintiff at this stage.

Plaintiff is a resident of the State of New York.  (Am. Compl. ¶ 14.) Albarran is a resident of the State of New York. (*Id*. ¶ 15.) AMCI is a domestic for-profit business with a principal place of business at 600 Steamboat Road South, Greenwich, CT 06830. (*Id*. ¶ 16.) AMCI Holdings is a domestic for-profit business with a principal place of business at 1105 North Market Street, Suite 1300, Wilmington, DE 19801. (*Id*. ¶ 19.) Albarran served as managing director of AMCI and AMCI Holdings. (*Id*. ¶¶ 18, 20-21.) 106 Tripp is a domestic for-profit business incorporated under the laws of the State of Delaware. (*Id*. ¶ 22.) Kundrun co-founded AMCI and AMCI Holdings and operated as AMCI and AMCI Holdings' CEO. (*Id*. ¶ 25.) Albarran worked as an employee and personal assistant to Kundrun. (*Id*. ¶¶ 27-28.) The Defendants owned the property, consisting of an estate and horse farm, located at 106 Tripp Street, Mount Kisco, New York 10549 (the "Property"). (*Id*. ¶¶ 29, 41.)

Albarran was specifically hired as an employee of Kundrun and the AMCI Defendants to stay on the Property, oversee work done on the Property, and retain individuals to perform work on the Property. (*Id*. ¶ 42.) Albarran was authorized by the Kundrun and the AMCI Defendants to hire and fire people for work related to the Property. (*Id*. ¶ 43.) Kundrun had the authority to hire and fire people for work related to the Property and was likewise responsible for supervising work schedules and conditions at the Property. (*Id*. ¶¶ 44-45.) Kundrun was responsible for paying individuals who performed work on the Property. (*Id*. ¶ 46.) Kundrun authorized Albarran to pay individuals who worked on the Property from Kundrun's personal account as well as the AMCI and/or AMCI Holdings account. (*Id*. ¶ 47.)

Albarran worked exclusively for Kundrun and then AMCI Defendants. (*Id*. ¶ 49.) Kundrun and the AMCI Defendants had exclusive control over Albarran's employment. (*Id*. ¶¶ 50-51.) Kundrun permitted Albarran to live on the Property in exchange for his work managing the Property. (*Id*. ¶ 55.) When Albarran, in the course of his responsibilities as manager of the Property, would contact individuals to perform work on the Property, he did so using his AMCI and/or AMCI Holdings email, which was jpa@amcigroup.com. (*Id*. ¶ 56.) This email was provided to Albarran by AMCI and/or AMCI Holdings. (*Id*. ¶ 57.) Kundrun and the AMCI Defendants had the authority and responsibility to monitor all AMCI and/or AMCI Holding email accounts, including that of Albarran's. (*Id*. ¶¶ 58-60.) Plaintiff alleges that Kundrun and the AMCI Defendants were aware or should have been aware of any inappropriate, non-work related emails sent from Albarran's account. (*Id*. ¶¶ 69-70.) Albarran possessed business cards indicating he was an employee of AMCI and/or AMCI Holdings. (*Id*. ¶ 71.)

Prior to August 2011, Plaintiff was hired by Albarran to do work on the Property for the Kundrun and the AMCI Defendants. (*Id*. ¶ 72.) Plaintiff would be compensated by a check written by Albarran from the joint bank account of Kundrun and "the other co-founder of AMCI and/or AMCI Holdings." (*Id*. ¶ 73.) The bank account used to pay Plaintiff for his employment was an AMCI and/or AMCI Holdings bank account. (*Id*. ¶ 74.)

In or about August 2011, Albarran contacted Plaintiff via his AMCI and/or AMCI Holdings email to retain Plaintiff for work on the Property. (*Id*. ¶ 76.) Plaintiff agreed to perform work on the Property. (*Id*. ¶ 77.) Before Plaintiff arrived at the Property, Albarran contacted Plaintiff's partner, using his AMCI and/or AMCI Holdings email, to inquire about whether Plaintiff's partner was still romantically involved with Plaintiff. (*Id*. ¶ 78.) Plaintiff booked a hotel to stay in while he performed work on the Property. (*Id*. ¶ 80.) Albarran canceled Plaintiff's hotel reservation and

instructed Plaintiff to stay on the Property in a spare bedroom while working therein. (*Id*. ¶ 81.) During the first few days after Plaintiff's arrival to the Property, Albarran constantly sexually harassed Plaintiff, taking photographs of Plaintiff without his consent in the spare bedroom Plaintiff was staying in. (*Id*. ¶¶ 11, 83.) Albarran was also sexually harassing other employees. (*Id*. ¶ 88.) Albarran's sexual harassment was "open and obvious." (*Id*. ¶ 5.) Even so, Kundrun and the AMCI Defendants gave Albarran "unfettered access" to the Property and the employees working on the Property while knowing that he was abusing his position. (*Id*. ¶ 89.) Thereafter, in or about August 2011, Albarran raped Plaintiff in the spare room he was staying in on the Property. (*Id*. ¶ 90.) Subsequently, Plaintiff contacted Kundrun and the AMCI Defendants to inform them of Albarran's sexual assault, specifically contacting them in 2011, 2017, and 2018. (*Id*. ¶¶ 93-94.)

In or about 2018, Kundrun formed 106 Tripp. (*Id*. ¶ 95.) At that same time, Kundrun transferred the Property, along with other properties, to 106 Tripp. (*Id*. ¶ 96.) Plaintiff alleges that Kundrun transferred the property to 106 Tripp to shield himself and the AMCI Defendants from liability for Albarran's sexual assault. (*Id*. ¶ 99.) The Defendants still operate the Property. (*Id*. ¶ 97.)

Based on the foregoing, Plaintiff brings claims alleging assault, battery, intentional infliction of emotional distress, negligence, negligent hiring, retention and supervision, and negligent infliction of emotional distress.

## PROCEDURAL HISTORY

On December 27, 2023, Plaintiff commenced this action against Defendant in his complaint (ECF No. 1). Plaintiff subsequently filed an Amended Complaint (ECF No. 32). The Amended Complaint is the operative complaint. The AMCI Defendants filed their motion to dismiss and memorandum of law in support ("AMCI Motion" or "AMCI Mot.", ECF Nos. 53 and 54). 106

Tripp filed its motion to dismiss and memorandum of law in support ("106 Tripp Motion" or "106 Tripp Mot.", ECF Nos. 56 and 57). Kundrun filed his motion to dismiss and memorandum of law in support ("Kundrun Motion" or "Kundrun Mot.", ECF Nos. 60 and 61). Plaintiff filed his opposition to the AMCI Defendants' motion to dismiss ("AMCI Opposition" or "AMCI Opp.", ECF No. 65) and filed his opposition to Kundrun's motion to dismiss ("Kundrun Opposition" or "Kundrun Opp.", ECF No. 64). AMCI Defendants filed their reply in support of their motion to dismiss ("AMCI Reply," ECF No. 66) and Kundrun filed his reply in support of his motion to dismiss ("Kundrun Reply," ECF No. 67).

## LEGAL STANDARD

### A.  Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference . . . and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry

is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiffs bring claims against the AMCI Defendants, 106 Tripp, and Kundrun, alleging negligence, negligent hiring, retention or supervision, and negligent infliction of emotional distress. The Court addresses them in turn.

### A.  Claims against 106 Tripp

Plaintiff seeks to bring claims against 106 Tripp for negligence, negligent hiring, retention or supervision, and negligent infliction of emotional distress. In order to bring 106 Tripp within the scope of the instant action, Plaintiff asserts that "Defendants Fritz Kundrun, American Metals & Coal International, Inc., AMCI Holdings, Inc., 106 Tripp Property LLC and Juan Albarran were agents, servants, employees and/or alter egos of each other." (Am. Compl. ¶ 26.) Plaintiff's alter-ego theory of liability must fail.

The basis of federal jurisdiction in the instant action is diversity jurisdiction. *See* 28 U.S.C. § 1332(a); (Am. Compl. ¶ 3.) In diversity actions, the court is to employ the choice-of-law principals of the forum state. *Comer v. Titan Tool, Inc.*, 888 F. Supp. 605, 608 (S.D.N.Y. 1995). 106 Tripp is a Delaware corporation. (Am. Compl. ¶ 22.) Accordingly, per New York choice of law principles, this Court will apply Delaware law to ascertain whether it should disregard 106 Tripp's corporate entity as an alter-ego of the other named Defendants. *See Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993).

In order to pierce the corporate veil (used interchangeably with alter ego theory under Delaware law), the plaintiff must demonstrate that "the corporation must be a sham and exist for no other purpose than as a vehicle for fraud." *In re Sunstates Corp. S'holder Litig.*, 788 A.2d 530 (Del. Ch. 2001) (quoting *Wallace v. Wood,* Del.Ch., 752 A.2d 1175, 1184 (1999)). This is a "difficult" standard to meet. *Id.*; *see also Harco Nat. Ins. Co. v. Green Farms. Inc.,* 1989 WL 110537, *4 (Del. Ch. Sept. 19, 1989) (noting that "persuading a Delaware Court to disregard the corporate entity is a difficult task . . . [and that] [t]he legal entity of a corporation will not be disturbed until sufficient reason appears"). To "support piercing the corporate veil . . . fraud or injustice must consist of something more than the alleged wrong in the complaint and relate to a misuse of the corporate structure." *Medi-Tec of Egypt Corp. v. Bausch & Lomb Surgical*, 2004 WL 415251, *8 (Del. Ch. Mar. 4, 2004).

Courts have held "an alter ego analysis must start with an examination of factors which reveal how the corporation operates and the particular defendant's relationship to that operation." *United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1104 (D. Del. 1988). Deciding whether to pierce the corporate veil is a "fact intensive inquiry, which may consider the following factors, none of which are dominant: (1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a façade. Delaware courts also must find an element of fraud to pierce the corporate veil." *Winner Acceptance Corp. v. Return on Cap. Corp.*, 2008 WL 5352063, *5 (Del. Ch. Dec. 23, 2008).

Plaintiff does not offer any substantive factual allegations that would empower the Court to analyze the relationship between 106 Tripp and the other named Defendants across these factors.

To the contrary, Plaintiff only offers conclusory allegations that 106 Tripp was an alter ego of the other named Defendants. (Am. Compl. ¶ 26.) Plaintiff asserts that "[b]ased on information and belief" 106 Tripp was formed to "shield" Kundrun and the AMCI Defendants "from liability for the sexual assault perpetrated by Albarran onto Plaintiff." (*Id*. ¶¶ 95-99.) Without offering the Court further substantive averments, the Court cannot find that 106 Tripp was an alter ego of the other named Defendants. *Cf Geyer v. Ingersoll Publications Co.,* 621 A.2d 784, 793-794 (Del. Ch. 1992) (upholding alter ego claim where plaintiff "alleged specific facts that are not merely conclusory but are sufficient to pierce [the] corporate veil"). Plaintiff asserting that 106 Tripp was an alter ego of the other named Defendants is a legal conclusion "couched as a factual allegation," which is entitled to no credence. *Iqbal*, 556 U.S. 662 at 678. Likewise, attaching "[b]ased on information and belief" to Plaintiff's assertion that 106 Tripp was formed to escape liability does not save the claim from being dismissed as a conclusory allegation owed no deference. *See Citizens United v. Schneiderman*, 882 F.3d 374, 385 (2d Cir. 2018) (noting that Plaintiff "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory").

Where a Plaintiff only offers conclusory allegations and offers no factual support indicating that a corporate entity existed to perpetrate a fraud, a court will not pierce the corporate veil. *See In re Sunstates Corp. S'holder Litig*., 788 A.2d 530, 534 (Del. Ch. 2001); *see also Mason v. Network of Wilmington, Inc.,* 2005 WL 1653954, *4 (Del. Ch. July 1, 2005). Therefore, the Court determines Plaintiff has failed to pled sufficient to a plausible support claim that 106 Tripp was an alter ego of the other named Defendants and cannot find a legal basis to permit Plaintiff claim as against 106 Tripp to proceed.

Further favoring granting 106 Tripp's motion to dismiss is that 106 Tripp only came into existence after the alleged sexual assault serving as the basis of the instant action. Per the Amended Complaint, 106 Tripp was formed in 2018. (Am. Compl. ¶ 95). Albarran's sexual assault occurred approximately seven years before – in August 2011. (*Id*. ¶ 90.) Each of the claims that Plaintiff raises against 106 Tripp require that 106 Tripp either owed Plaintiff a duty of care (negligence and negligent infliction of emotional distress) or that 106 Tripp and Albarran were in an employee-employer relationship (negligent hiring, retention or supervision). *See Silivanch v. Celebrity Cruises, Inc.,* 171 F. Supp. 2d 241, 252 (S.D.N.Y. 2001) (to state a claim for negligence a defendant must owe the plaintiff a duty of care); *see also Hiralall v. Sentosacare, LLC,* 2016 WL 1126530, *15 (S.D.N.Y. Mar. 18, 2016) (to state a claim for negligent infliction of emotional distress a defendant must owe the plaintiff a duty of care*); Bouchard v. New York Archdiocese*, 719 F. Supp. 2d 255, 261 (S.D.N.Y. 2010) (to state a claim for negligent hiring, retention or supervision the defendant must be in an employer-employee with the tortfeasor). By virtue of 106 Tripp not existing until years after the alleged sexual assault, and by virtue of 106 Tripp not being an alter ego of the other named Defendants, 106 Tripp is necessarily precluded from owing a duty of care to the Plaintiff at the time of the alleged sexual assault and is necessarily precluded from having an employer-employee relationship with Albarran at the time of the alleged sexual assault. Therefore, as currently written, the Amended Complaint fails to allege plausible claims for negligence, negligent infliction of emotional distress, and negligent hiring, retention or supervision against 106 Tripp, and the Court grants 106 Tripp's motion to dismiss each claim raised against it without prejudice.

## B.  Negligent Infliction of Emotional Distress Claims

Plaintiff's negligent infliction of emotional distress claims against Kundrun and the AMCI

Defendants must be dismissed without prejudice as being duplicative of Plaintiff's negligent hiring, retention or supervision claims. The Court is empowered to dismiss claims that are duplicative. *See Mitchell v. Am. Arb. Ass'n,* 2018 WL 10419732, *3 (S.D.N.Y. May 17, 2018); *see also Ningbo Yang Voyage Textiles Co. v. Sault Trading*, 2019 WL 5399973, *7 (E.D.N.Y. Sept. 10, 2019) (noting that "[c]ourts frequently dismiss duplicative claims that arise 'from the same facts' and seek 'the same relief as another claim'").

Plaintiff's negligent infliction of emotional distress claims rest on the same facts as Plaintiff's negligent hiring, retention or supervision claims. For the latter, Plaintiff states that the Defendants' "negligent hiring, retention and/or supervision of" Albarran resulted in Albarran "sexually assaulting Plaintiff." (Am. Compl. ¶ 138.) For the former, Plaintiff states that Defendants' "failure to properly hire, advise and/or supervise" Albarran "would and did proximately result in physical and emotional distress to Plaintiff." (*Id*. ¶ 149.) Thus, both sets of claims center around the hiring, retention and/or supervision practices of the Defendants.

Likewise, both sets of claims seek identical damages. For the negligent hiring, retention or supervision claims, Plaintiff states he is "entitled to compensatory damages from Defendants . . . in such sums as a jury would find fair, just and/or adequate" as well as "punitive and exemplary damages from Defendants . . . in such sums as a jury would find fair, just and/or adequate to deter future similar conduct." (*Id*. ¶ 145.) For the negligent infliction of emotional distress claims, Plaintiff again states he is entitled to "compensatory damages from Defendants . . . in such sums as a jury would find fair, just and/or adequate" as well as "punitive and exemplary damages from Defendants . . . in such sums as a jury would find fair, just and/or adequate to deter future similar conduct." (*Id*. ¶¶ 153-154.)

Therefore, the Court finds that Plaintiff's negligent infliction of emotional distress claims are duplicative of Plaintiff's negligent hiring, retention or supervision claims and therefore grants Kundrun and the AMCI Defendants' motions to dismiss Plaintiff's negligent infliction of emotional distress claims without prejudice.

## C. Negligence Claims

Similar to Plaintiff's negligent infliction of emotional distress claims, the Court finds that Plaintiff's negligence claims against Kundrun and the AMCI Defendants are duplicative of Plaintiff's negligent hiring, retention or supervision claims. As just discussed, the Court is empowered to dismiss claims that are duplicative. *See Mitchell,* 2018 WL 10419732. Claims are duplicative where they arise from the same set of facts and seek the same relief. *See Ningbo Yang Voyage Textiles Co*, 2019 WL 5399973. Plaintiff attempts to argue that his negligence claims are not duplicative of his negligent hiring, retention or supervision claims because the "negligence cause of action is premised primarily on [Defendants'] relationship with Plaintiff and duty owed to Plaintiff to protect him from foreseeable harm, whereas Plaintiff's NHRS claim is premised on [Defendants'] relationship with Albarran and their duty to supervise him as their employee." (AMCI Opp., p. 17.) Plaintiff's argument here merely reflects that to state a negligence claim one must satisfy elements different from those needed to state a negligent hiring, retention or supervision claim; this argument does not actually articulate distinct factual bases and requested relief between the two sets of claims.

While Plaintiff argues that "the two separate causes of actions [are] based on completely different facts," Plaintiff's Amended Complaint tells a different story. (*Id*.). Plaintiff's negligence claims rests on the same conduct undergirding Plaintiff's negligent hiring, retention or supervision claims. Specifically, in pleading his negligence claims, Plaintiff's asserts that it was Defendants'

"negligent hiring, retention and/or supervision" of Albarran that resulted in Albarran "sexually assaulting Plaintiff." (Am. Compl. ¶ 125.) In the same section, Plaintiff also makes reference to Defendants having "had a duty to properly hire, train, retain, supervise and/or discipline their employees" including Albarran. (*Id*. ¶ 127.) Plaintiff thereby argues that Defendants "breached their duty of care by their own conduct . . . [by not] terminating [Albarran]'s . . . employment or taking steps to warn and/or otherwise reduce the risk that [Albarran] . . . would use his position of power to engage in sexual misconduct with Plaintiff." (*Id*. ¶ 128.) Thus, Plaintiff's negligence claims rests on Defendants' conduct surrounding their hiring, retention and supervision of Albarran and the corresponding consequences, favoring dismissal of Plaintiff's negligence claims as duplicative of Plaintiff's hiring, retention or supervision claims.

Additionally, in terms of damages sought for Plaintiff's negligence claim, Plaintiff's requested relief is identical to that of his negligent hiring, retention or supervision claims, seeking again: "compensatory damages . . . in such sums as a jury would find fair, just and/or adequate" and "punitive and exemplary damages . . . in such sums as a jury would find fair, just and/or adequate to deter future similar conduct." (*Id*. ¶¶ 133-134.) Therefore, the Court finds that Plaintiff's negligence claims are duplicative of Plaintiff's negligent hiring, retention or supervision claims and grants Kundrun and the AMCI Defendants' motions to dismiss Plaintiff's negligence claims without prejudice.

### D.  Negligent Hiring, Retention or Supervision Claims

In order to state a claim for negligent hiring, retention or supervision, a plaintiff must, "in addition to the traditional elements of negligence . . . show '(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's

occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels.'" *Doe v. Indyke*, 465 F. Supp. 3d 452, 468 (S.D.N.Y. 2020) (citing *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004)). Where a plaintiff is alleging negligent hiring, retention or supervision claims based on sexual abuse, the plaintiff must demonstrate there was prior misconduct on the part of the tortfeasor "of the same kind that caused the injury; general unrelated or lesser allegations of prior wrongdoing are insufficient." *Doe v. Alsaud,* 12 F. Supp. 3d 674, 681 (S.D.N.Y. 2014). As the elements for claims of negligent hiring, retention or supervision are shared, the Court addresses them together. *Indyke*, 465 F. Supp 3d 452 at 468.

Plaintiff's negligent hiring, retention, or supervision claims against Kundrun and the AMCI Defendants must be dismissed for failure to satisfy the second prong of the analysis – demonstrating they knew or should have known about Albarran's propensity for the conduct that caused Plaintiff's injury prior to the actual injury occurring.  Plaintiff's argument fails because Plaintiff does not assert that Albarran had a propensity to sexually assault prior to his sexually assaulting the Plaintiff. To put it otherwise, Plaintiff does not proffer sufficient facts to demonstrate that Kundrun and the AMCI Defendants were aware or should have been aware of Albarran's propensity for the conduct that caused Plaintiff's injury because there was no propensity for such conduct to begin with.

Plaintiff's attempt to establish a propensity for sexual assault principally rests on several instances mentioned in the Amended Complaint: 1) that Albarran, via his AMCI email, contacted Plaintiff's partner asking whether Plaintiff's partner was still romantically involved with Plaintiff (Am. Compl. ¶ 78); 2) that, after Plaintiff booked a hotel for himself to reside in while performing work on the Property, Albarran canceled Plaintiff's reservation and instructed him to stay on the

Property instead (*Id.* ¶ 81); 3) that Albarran took photographs of Plaintiff without his consent (*Id.* ¶ 83); and 4) that Albarran was "sexually harassing other employees" (*Id.* ¶ 88).

At most, liberally interpreting the facts to its outermost limits, such conduct could evidence that Albarran had a propensity to sexually harass. This is fatal to any prospective negligent hiring, retention or supervision claims predicated on allegations of sexual assault; a propensity to sexually harass is not sufficient to establish a propensity to sexually assault. *See Aslaud*, 12 F. Supp. 3d 674 at 681 (citing to *Anderson v. Adam's Mark Hotels & Resorts*, 211 F.3d 1277 (10th Cir. 2000) for the proposition that "prior sanctions against supervisor for sexually harassing other employees by attempting to date them did not establish his propensity to commit sexual assault"). Albarran's alleged conduct - inquiring about Plaintiff's relationship status, cancelling Plaintiff's hotel reservations, taking pictures of Plaintiff without his consent, and sexually harassing employees - would not be "of the same kind that caused [Plaintiff's] injury," specifically Plaintiff being raped. *Alsaud,* 12 F. Supp. 3d at 681. Rather, such conduct would constitute "lesser allegations of prior wrongdoing [that] are insufficient" to state a negligent hiring, retention or supervision claim predicated on sexual assault. *Id. see also LaFrantz v. St. Mary's Roman Cath. Church*, 2024 WL 216718, *5 (E.D.N.Y. Jan. 19, 2024) (dismissing negligent hiring, retention or supervision claim where "[p]laintiff has failed to allege any prior sexual abuse" against the employee). Thus, on this basis alone, dismissal of Plaintiff's negligent hiring, retention or supervision claims is appropriate.

### a. Negligent Hiring Claims

Even assuming *arguendo* the conduct alleged by Plaintiff did establish a propensity for sexual assault and that Plaintiff sufficiently alleged prior conduct of the same kind that caused Plaintiff's injury, Plaintiff's negligent hiring, retention or supervision claims would still be dismissed for failure to demonstrate Kundrun and the AMCI Defendants knew or should have

known of Albarran's propensity to sexually assault and for failure to demonstrate Kundrun and the AMCI Defendants knew or should have known of such prior conduct. (*Id.* ¶¶ 59-60, 69-70 79, 81, 88). Specifically, regarding Plaintiff's negligent hiring claims, Plaintiff makes no claims whatsoever that Kundrun or the AMCI Defendants knew of any sexual misconduct or propensity towards sexual assault at the time of hiring Albarran; this deficiency forecloses Plaintiff's prospective negligent hiring claims. *C.Q. v. Est. of Rockefeller*, 2021 WL 4942802 (S.D.N.Y. Oct. 21, 2021) (dismissing negligent hiring claim where there were no specific factual allegations that, prior to being hired, the tortfeasor had a propensity for sexual assault or that the employer knew or should have known the tortfeasor had such a propensity). Accordingly, the Court finds that as currently written, the Amended Complaint does not plausibly allege negligent hiring claims against Kundrun or the AMCI Defendants, and therefore grants Kundrun and the AMCI Defendants' motions to dismiss such claims without prejudice.

### b. Negligent Retention and Supervision Claims

As to Plaintiff's negligent retention and supervision claims, Plaintiff does not proffer facts other than his conclusory assertions that Kundrun or the AMCI Defendants knew or should have known of Albarran's email because it was sent from his company email or that Kundrun or the AMCI Defendants knew of or should have known of Albarran cancelling Plaintiff's hotel reservation. Plaintiff reasons that Kundrun and the AMCI Defendants should have known or did in fact know of Albarran's conduct and behavior because they simply should have known or simply did know – without proffering factual allegations evidencing how exactly this was the case. (*See* Am. Compl. ¶¶ 69-70, 79, 82, 84, 87-88). On one hand, the Court is to "accept all facts alleged in the complaint as true and construe all reasonable inferences in a plaintiff's favor." *In re Weight Watchers Int'l Inc. Sec. Litig.*, 504 F. Supp. 3d 224, 242 (S.D.N.Y. 2020). On the other hand, this

axiom presupposes the existence of factual allegations to be taken as true, which Plaintiff is not sufficiently pleading here. *Id.* Rather, Plaintiff is only offering the Court his belief that Kundrun and the AMCI Defendants should have known of Albarran's email and Albarran's cancelling Plaintiff's hotel reservations, with no factual averments to justify such a conclusion. Such *ipse dixit* assertions do not satisfy the *Twombly* and *Iqbal* pleading standards. *Britton v. Bronx Parent Hous. Network, Inc.*, 2022 WL 4332735, *3 (S.D.N.Y. Sept. 19, 2022). Without more, Plaintiff's Amended Complaint does not give the Court leeway to find that Kundrun or the AMCI Defendants should have known of Albarran's email or Albarran's cancelling Plaintiff's hotel reservation, diminishing Plaintiff's negligent retention or supervision claims even more.

Plaintiff does get closer to demonstrating Kundrun and the AMCI Defendants should have had knowledge or indeed had actual knowledge of Albarran's behavior when he alleges that Kundrun "had the ability and duty to supervise Albarran on the Property" (Am. Compl. ¶ 85), that "during the first few days Plaintiff was staying at the [Property], he was subjected to constant sexual harassment by Albarran including but not limited to [Albarran] taking photographs of Plaintiff without his consent" (*Id*. ¶ 83), and that Albarran was sexually harassing other employees in an "open and obvious" manner. (*Id*. ¶ 5, 89.) However, such allegations are ultimately insufficient because Plaintiff does not allege how exactly Kundrun, as supervisor, would have learned or did indeed learn of such conduct – for example, by witnessing the conduct firsthand or by Plaintiff reporting the conduct – and because Plaintiff does not allege how the sexual harassment was "open and obvious" or what the sexually harassing conduct even was. (*Id.*). Such conclusory and cursory statements of fact have been routinely dismissed as insufficient to state a claim for negligent retention or supervision. *See Alsaud,* 12 F. Supp. 3d 674 at 683 (S.D.N.Y. 2014) (granting motion to dismiss negligent supervision or retention claim where plaintiff's allegations "only

concludes that [the employer] knew or should have known before a [sexual] attack of [the attacker's] predisposition to sexual violence").

Worth noting is that, if anything, the Amended Complaint undermines the suggestion that Kundrun and the AMCI Defendants should have known or did indeed know of Albarran's conduct in that part of the referenced sexual misconduct – Albarran taking photographs of Plaintiff without his consent – was done not where Kundrun, as supervisor, would have arguably witnessed such behavior, but instead was done in the seclusion of the spare bedroom where Plaintiff was residing. (Am. Compl. ¶ 11.) Indeed, noticeably absent from Plaintiff's Amended Complaint is that he reported such conduct to Kundrun or the AMCI Defendants' prior to Albarran's sexual assault, undermining Plaintiff's negligent retention or supervision claims. *Cf Vione v. Tewell,* 12 Misc.3d 973, 979-980 (N.Y.Sup.Ct.2006) (dismissal of negligent retention and supervision claim not warranted where plaintiff warned employer of employee's conduct for two and a half years) and *Est. of Rockefeller,* 2021 WL 4942802 at *10 (declining to grant motion to dismiss negligent retention and supervision claim where the employer failed to investigate tortfeasor after first sexual assault).

Therefore, the Court finds that as currently written, the Amended Complaint does not plausibly allege negligent retention or supervision claims against Kundrun or the AMCI Defendants, and therefore grants Kundrun and the AMCI Defendants' motions to dismiss such claims without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants Fritz Kundrun, American Metals & Coal International, Inc., AMCI Holdings, Inc., and 106 Tripp Property LLC's respective motions to dismiss Plaintiff's negligence claims, negligent hiring, retention or supervision claims,

and negligent infliction of emotional distress claims without prejudice. Plaintiff is granted leave to file a Second Amended Complaint by January 19, 2025. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so any claims that he wishes to pursue must be included in, or attached to, the Second Amended Complaint. Should Plaintiff file a Second Amended Complaint, the Defendants are directed to answer or otherwise respond by February 19, 2025, and the parties are directed to confer, complete and file a Case Management Plan and Scheduling Order (blank form attached) by March 21, 2025. If Plaintiff fails to file a Second Amended Complaint within the time allowed, those claims that were dismissed without prejudice shall be deemed dismissed with prejudice. If no Second Amended Complaint is filed, Defendant Juan Albarran is directed to file an answer on or before February 19, 2025, and the parties are directed to complete and file a Case Management Plan and Scheduling Order by March 21, 2025.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 53, 56 and 60.

Dated:    December 5, 2024
          White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT                          Rev. Jan. 2012

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x



                                              **CIVIL CASE DISCOVERY PLAN**

                           Plaintiff(s),      **AND SCHEDULING ORDER**

        - against -




                           Defendant(s).      _____ CV _____ (NSR)



-------------------------------------------------------------x


 This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):


   1.       All parties [consent] [do not consent] to conducting all further proceedings before a
            Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c).  The
            parties are free to withhold consent without adverse substantive consequences.  (If all
            parties consent, the remaining paragraphs of this form need not be completed.)


   2.       This case [is] [is not] to be tried to a jury.


   3.       Joinder of additional parties must be accomplished by _____.


   4.       Amended pleadings may be filed until _____.

5.      Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.      First request for production of documents, if any, shall be served no later than _____.

7.      Non-expert depositions shall be completed by _____.

      a.      Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

      b.      Depositions shall proceed concurrently.

      c.      Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8.      Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.      Requests to Admit, if any, shall be served no later than _____.

10.     Expert reports shall be served no later than _____.

11.     Rebuttal expert reports shall be served no later than _____.

12.     Expert depositions shall be completed by _____.

13.     Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.     **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.    Any motions shall be filed in accordance with the Court's Individual Practices.

16.    This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.    The Magistrate Judge assigned to this case is the Hon. _____.

18.    If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.    The next case management conference is scheduled for _____, at _____.  (The Court will set this date at the initial conference.)

SO ORDERED.

Dated:  White Plains, New York

_____

_____

Nelson S. Román, U.S. District Judge