USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:    3/11/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERRENCE LEE,

      Plaintiff,

-against-

JUAN ALBARRAN a/k/a JOHN
ALBARRAN, FRITZ KUNDRUN,
AMERICAN METALS & COAL
INTERNATIONAL, INC., AMCI
HOLDINGS, INC.,

      Defendants.

23 CV 11215 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiff Terrence Lee ("Plaintiff") commenced this action on December 27, 2023, asserting claims for assault, battery, and intentional infliction of emotional distress against Defendant Juan Albarran a/k/a John Albarran ("Albarran"), and claims for negligence, negligent hiring, retention or supervision, and negligent infliction of emotional distress against Defendants Fritz Kundrun ("Kundrun"), American Metals & Coal International, Inc. ("AMCI"), and AMCI Holdings, Inc. ("AMCI Holdings").[1] Presently before the Court are the motions of Defendant Kundrun and the AMCI Defendants (collectively, the "Defendants") to dismiss the operative Second Amended Complaint ("SAC"). The AMCI Defendants move pursuant to Rules 12(b)(2) and 12(b)(6), and Kundrun moves pursuant to Rule 12(b)(6).

For the following reasons, Defendant Kundrun and the AMCI Defendants' motions to dismiss are GRANTED.

---

[1] Defendant 106 Tripp Property LLC was dismissed from this action with prejudice pursuant to a Stipulation of Partial Dismissal under Rule 41(a)(1)(A)(ii). (ECF No. 94.) The Clerk of Court terminated 106 Tripp Property LLC and removed it from the caption. (*Id.*)

1

**BACKGROUND**

**A. FACTUAL BACKGROUND**

The following facts are drawn from the SAC and, for purposes of these motions, are accepted as true and construed in the light most favorable to Plaintiff.

Plaintiff is a resident of the State of New York. (SAC ¶ 14.) Albarran is a resident of the State of New York. (*Id.* ¶ 15.) AMCI is a domestic for-profit business with a principal place of business at 600 Steamboat Road South, Greenwich, CT 06830. (*Id.* ¶ 16.) AMCI Holdings is a domestic for-profit business with a principal place of business at 1105 North Market Street, Suite 1300, Wilmington, DE 19801. (*Id.* ¶ 19.) Albarran served as managing director of AMCI and AMCI Holdings. (*Id.* ¶¶ 18, 20-21.) Kundrun co-founded AMCI and AMCI Holdings and operated as AMCI and AMCI Holdings' CEO. (*Id.* ¶ 25.) Albarran worked as an employee and personal assistant to Kundrun. (*Id.* ¶¶ 27-28.) The Defendants owned the property, consisting of an estate and horse farm, located at 106 Tripp Street, Mount Kisco, New York 10549 (the "Property"). (*Id.* ¶¶ 29, 41.)

Albarran was employed by Kundrun and the AMCI Defendants to stay at the Property, oversee the work performed there, and retain individuals to assist with that work. (SAC ¶ 42.) Albarran was authorized by the Kundrun and the AMCI Defendants to hire and fire people for work related to the Property. (*Id.* ¶ 43.) Kundrun had the authority to hire and fire people for work related to the Property and was likewise responsible for supervising work schedules and conditions at the Property. (*Id.* ¶¶ 44-45.) Kundrun was responsible for paying individuals who performed work on the Property. (*Id.* ¶ 46.) Kundrun authorized Albarran to pay individuals who worked on the Property from Kundrun's personal account as well as the AMCI and/or AMCI Holdings account. (*Id.* ¶ 47.)

Albarran allegedly worked exclusively for Kundrun and the AMCI Defendants. (*Id*. ¶ 49.) Kundrun and the AMCI Defendants allegedly exercised exclusive control over Albarran's employment. (*Id*. ¶¶ 50-51.) Kundrun permitted Albarran to live on the Property in exchange for his work managing the Property. (*Id*. ¶ 55.) When Albarran, in the course of his responsibilities as manager of the Property, would contact individuals to perform work on the Property, he did so using his AMCI and/or AMCI Holdings email, which was jpa@amcigroup.com. (*Id*. ¶ 56.) This email was provided to Albarran by AMCI and/or AMCI Holdings. (*Id*. ¶ 57.) Kundrun and the AMCI Defendants had the authority and responsibility to monitor all AMCI and/or AMCI Holdings' email accounts, including that of Albarran's. (*Id*. ¶¶ 58-60.) Plaintiff asserts that Kundrun and the AMCI Defendants knew or should have known of inappropriate, non-work-related emails sent from Albarran's account. (*Id*. ¶¶ 60-62.) Albarran possessed business cards indicating he was an employee of AMCI and/or AMCI Holdings. (*Id*. ¶ 63.)

In or about 2007 or 2008, Albarran openly made sexually explicit jokes and comments about a horse trainer named Oscar on the Property. (*Id*. ¶ 64.) Albarran would regularly swim naked in the pool on the Property, including when other employees and/or individuals hired to perform work on the Property were present. (*Id*. ¶ 65.) Plaintiff contends that Kundrun, AMCI, and/or AMCI Holdings knew or should have known that Albarran sexually harassed Oscar on the Property. (*Id*. ¶ 66.)  Prior to August 2011, Plaintiff was hired by Albarran to perform work on the Property for Kundrun, AMCI, and/or AMCI Holdings. (*Id*. ¶ 67.) Plaintiff was hired to work with Kundrun's horse trainer in the horse barn to clean and maintain Kundrun's horse equipment. (*Id*. ¶ 68.) Whenever Plaintiff did work on the property, he would be compensated by a check written by Albarran from the joint bank account of Kundrun and "the other co-founder of AMCI and/or

AMCI Holdings." (*Id*. ¶ 69.) The bank account used to pay Plaintiff for his employment was an AMCI and/or AMCI Holdings bank account. (*Id*. ¶ 70.)

In or about August 2011, Albarran contacted Plaintiff via his AMCI and/or AMCI Holdings email to retain Plaintiff for work on the Property. (SAC ¶ 72.) Plaintiff agreed to perform work on the Property. (*Id*. ¶ 73.) Before Plaintiff arrived at the Property, Albarran contacted Plaintiff's partner, using his AMCI and/or AMCI Holdings email, to inquire about whether Plaintiff's partner was still romantically involved with Plaintiff. (*Id*. ¶ 74.) Plaintiff booked a hotel to stay in while he performed work on the Property. (*Id*. ¶ 76.) Albarran canceled Plaintiff's hotel reservation and instructed Plaintiff to stay on the Property in a spare bedroom while working therein. (*Id*. ¶ 77.)

According to the SAC, Albarran canceled Plaintiff's hotel reservation while acting in his capacity as an agent or employee of Kundrun and the AMCI entities. (SAC ¶ 78.) As an employee or agent of Kundrun and/or the AMCI entities, Albarran directed Plaintiff to stay in the spare bedroom on the Property. (*Id*. ¶ 79.) Albarran notified Kundrun of Plaintiff's retention, including the nature and anticipated duration of the work. (*Id*. ¶ 80.) Kundrun's horse trainer, with whom Plaintiff worked, was aware that Plaintiff was staying on the Property because she observed Plaintiff walking between the house and the barn. (*Id*. ¶ 81.) The horse trainer and Kundrun communicated regularly regarding matters relating to the Property and the horses, including Plaintiff's work. (*Id*. ¶ 82.) Plaintiff's presence in the spare bedroom, and his movement between the house and the barn, were allegedly readily observable. (*Id*. ¶ 83.) Kundrun, AMCI, and/or AMCI Holdings were aware, or should have been aware, that Albarran canceled the hotel reservation and directed Plaintiff to stay on the Property. (*Id*. ¶ 84.) Plaintiff alleges that, had Albarran been properly supervised, Defendants would have known that Plaintiff was staying in the house on the Property. (*Id*. ¶ 85.)

During the first few days after Plaintiff's arrival at the Property, Albarran subjected Plaintiff to repeated sexual harassment. (SAC ¶¶ 86–87.) This included taking photographs of Plaintiff without consent in the spare bedroom where Plaintiff was staying and asking Plaintiff to swim naked in the pool. (*Id.*) Albarran entered the spare bedroom after Plaintiff showered and at night. (*Id.* ¶ 87.) Albarran also engaged in similar conduct toward other individuals performing work on the Property, including Oscar. (*Id.* ¶¶ 96-97.) His conduct progressed from sexually explicit jokes and emails about Plaintiff's relationship status to canceling Plaintiff's hotel reservation, directing him to stay in the spare bedroom, requesting that he swim naked, entering the bedroom after he showered, and taking photographs without consent. (*Id.* ¶ 95.) Albarran's sexual abuse was "open and obvious." (*Id.* ¶ 5.) Even so, Kundrun and the AMCI Defendants granted Albarran "unfettered access" to the Property and individuals working there despite awareness that he was abusing his position. (*Id.* ¶ 102.)

One night in or about August 2011, Albarran entered the spare bedroom where Plaintiff was staying and sexually assaulted Plaintiff. (SAC ¶ 103.) The following day, Albarran left the Property. (*Id.* ¶ 104.) Plaintiff subsequently contacted Kundrun and the AMCI Defendants regarding the alleged assault, including communications in 2011, 2017, and 2018. (*Id.* ¶ 107.) As owner of the Property, Kundrun had the authority to supervise Albarran and responsibility for maintaining safe conditions for individuals performing work on the Property. (*Id.* ¶¶ 88–91.) He was not regularly present at the Property and did not designate another individual to supervise Albarran or oversee conditions there. (*Id.* ¶ 92.) Plaintiff asserts that, had Kundrun properly supervised Albarran, he would have discovered Albarran's repeated entry into the spare bedroom, his interactions with Plaintiff, and his prior conduct toward others working on the Property. (*Id.* ¶¶

93–100.) Had Kundrun been present, Plaintiff could have reported the conduct before the alleged assault occurred. (*Id*. ¶ 94.)

In or about 2018, Kundrun formed 106 Tripp. (SAC ¶ 110.) At that same time, Kundrun transferred the Property, along with other properties, to 106 Tripp. (*Id*. ¶ 111.) Plaintiff asserts that Kundrun transferred the property to 106 Tripp to shield himself and the AMCI Defendants from liability for Albarran's sexual assault. (*Id*. ¶ 114.) The Defendants still operate the Property. (*Id*. ¶ 112.)

Based on the foregoing, Plaintiff asserts claims for negligence, negligent hiring, retention and supervision, and negligent infliction of emotional distress against Defendants Kundrun and AMCI. (SAC ¶¶ 139–176.)

## PROCEDURAL HISTORY

On December 5, 2024, the Court issued an Opinion & Order granting Defendants' motions to dismiss Plaintiff's negligence, negligent hiring, retention, and supervision, and negligent infliction of emotional distress claims without prejudice and granting Plaintiff leave to amend. (Former Opinion, ECF No. 73.) Plaintiff thereafter filed the Second Amended Complaint ("SAC") on January 27, 2025. (SAC, ECF No. 75.) The SAC is the operative complaint.

On March 3, 2025, the Court dismissed all claims against 106 Tripp Property LLC with prejudice and removed 106 Tripp Property LLC from the caption. (ECF No. 94.) Presently before the Court are the motions to dismiss the SAC filed by Defendant Fritz Kundrun and Defendants AMCI Holdings, Inc. and American Metals & Coal International, Inc. (collectively, the "AMCI Defendants" or "AMCI"). (Kundrun Mot., AMCI Mot., ECF Nos. 99, 104.) Kundrun and the AMCI Defendants each filed memoranda of law in support of their respective motions. (Kundrun Mem., AMCI Mem., ECF Nos. 100, 105.) Plaintiff filed oppositions. (Pltf. Kundrun Opp., Pltf.

AMCI Opp. ECF Nos. 102, 107.) Kundrun and the AMCI Defendants thereafter filed replies. (Kundrun Reply, AMCI Reply, ECF Nos. 103, 108.)

## LEGAL STANDARD

### A.  Rule 12(b)(2)

A defendant may seek to dismiss a claim or action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To overcome a motion to dismiss for lack of personal jurisdiction at this juncture, the plaintiff must make a *prima facie* showing that the court has jurisdiction over each defendant. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010) (internal quotation marks omitted). The Plaintiff must also "establish the court's jurisdiction with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004).  In resolving this motion, the court may rely on materials beyond the pleadings, including affidavits attached thereto. (*See id.*) The pleadings and supporting affidavits are construed in the light most favorable to plaintiff, with all doubts resolved in the plaintiff's favor. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010).

In diversity cases, courts apply a two-step analysis to determine personal jurisdiction. They first assess whether jurisdiction is authorized under the law of the forum state—here, New York's long-arm statute, CPLR § 302—and only if that threshold is met do they consider whether the exercise of jurisdiction comports with constitutional due process. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010); *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 90 (2d Cir. 2017).

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), the inquiry for motions to dismiss is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." (*Id.* at 679.) The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" to credit "mere conclusory statements," or to accept "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." (*Id.* at 679.) A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." (*Id.* at 678.)

**DISCUSSION**

Plaintiff asserts: (1) negligence; (2) negligent hiring, retention, and supervision; and (3) negligent infliction of emotional distress against Defendants Fritz Kundrun and the AMCI Defendants. (SAC ¶¶ 139–176.)

### I.   The Court Lacks Personal Jurisdiction Over the AMCI Defendants[2]

Because "a dismissal for lack of jurisdiction renders all other claims moot," the Court begins with personal jurisdiction. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 133 (S.D.N.Y. 2021) (citing *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 386 (S.D.N.Y. 2002)).  In a diversity case, the analysis proceeds in two steps: the Court must first determine whether jurisdiction is authorized under the law of the state in which the federal court sits.[3], and then assess whether the exercise of jurisdiction comports with federal due process. *Smart Shoppers NY LLC v. Tylers Coffee LLC,* No. 22 CIV. 4969 (NSR), 2024 WL 113731, at *4 (S.D.N.Y. Jan. 10, 2024) "Under the New York long-arm statute, a court in New York can exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under [N.Y. Civ. Prac. L. and Rule ("CPLR")] § 301, or specific jurisdiction, under CPLR § 302." (*Id.*) (quoting *Wallert v. Atlan*, 141 F. Supp.3d 258, 271 (S.D.N.Y. 2015)). If a court determines that neither Section 301 nor Section 302 is met, it need not consider whether constitutional due process is satisfied. *Id.* "A plaintiff must establish [personal] jurisdiction with respect to each claim asserted." *79th Grp., Inc. v. Moore*, No. 23-CV-2521, 2024 WL 36992, at *12 (S.D.N.Y. Jan. 3, 2024) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

The Court concludes that it lacks personal jurisdiction over the AMCI Defendants and therefore grants their motion to dismiss under Rule 12(b)(2).

---

[2] The Court notes that the AMCI Defendants raised lack of personal jurisdiction in their initial motion to dismiss. (ECF No. 53.) The issue was therefore preserved and is properly before the Court. Plaintiff's argument that the Court "necessarily" found personal jurisdiction previously by addressing the merits is incorrect. (*See* Pltf. AMCI Opp. at 6.) The Court made no prior ruling that personal jurisdiction existed over the AMCI Defendants. The issue is therefore properly before the Court and is addressed here.

[3] Because this action was filed in New York, New York law governs the statutory inquiry.

## A. General Jurisdiction

General jurisdiction is unavailable here. A court may exercise general, all-purpose jurisdiction only where the defendant is "essentially at home" in the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). For a corporation, the "paradigm" forums in which it is at home are its place of incorporation and its principal place of business. *Id.* at 137–39 & n.19. Only in an "exceptional case" will a corporation be deemed at home in another forum. *Id.* at 139 n.19.

The SAC alleges that American Metals & Coal International, Inc. ("AMCI") is incorporated in Delaware and maintains its principal place of business in Connecticut. (SAC ¶ 16.) The same is true of AMCI Holdings, Inc. (*Id.* ¶ 19.) Thus, neither entity is incorporated in New York nor headquartered here. Plaintiff does not plead facts suggesting that this is the rare "exceptional case" in which a corporation's operations in a forum are so substantial as to render it essentially at home there. See *Daimler*, 571 U.S. at 139 n.19. Nor does Plaintiff argue otherwise. (*See* Pltf. AMCI Opp. at 6.)

Because the AMCI entities are not "at home" in New York, general jurisdiction under CPLR § 301 is unavailable.

## B. Specific Jurisdiction

The Court also lacks specific personal jurisdiction over the AMCI Defendants. "N.Y. C.P.L.R. § 302(a) governs specific jurisdiction." *Mirza v. Dolce Vida Med. Spa, LLC*, 2024 WL 307969, at *3 (S.D.N.Y. Jan. 26, 2024). The statute permits jurisdiction only where the claim arises from a nondomiciliary who (1) transacts business in New York, (2) commits a tortious act while physically present in New York, or (3) commits an out-of-state tort causing in-state injury under narrow foreseeability and revenue requirements. N.Y. C.P.L.R. § 302(a); *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246–47 (2d Cir. 2007). Under each subsection, the required jurisdictional

10

nexus must arise from the defendant's own conduct, not the in-state activities of third parties. *Walden v. Fiore*, 571 U.S. 277, 284, 289 (2014).  None of the three provisions of § 302(a) confers specific jurisdiction in this case.

     i.        *CPLR § 302(a)(1): Transaction of Business*

Section 302(a)(1) permits jurisdiction where a defendant "transacts any business within the state" and the cause of action "arises from" that transaction. To establish jurisdiction under this subsection, Plaintiff must show both that AMCI purposefully availed itself of the privilege of conducting activities in New York and that there is an articulable nexus between the business transaction and the asserted claims. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168–69 (2d Cir. 2013).

Plaintiff does not identify any business transaction by AMCI in New York from which his claims arise. Plaintiff's claims arise from the allegation that Albarran sexually assaulted him at the Property in Mount Kisco. (SAC ¶¶ 86–87, 103.) That alleged assault is not a "business transaction," nor is it conduct undertaken in furtherance of AMCI's corporate interests. Courts consistently hold that an employee's sexual misconduct does not constitute the transaction of business on behalf of the employer. *See Edwardo v. Roman Catholic Bishop of Providence*, 66 F.4th 69, 74–75 (2d Cir. 2023) (no jurisdiction where alleged assault was not undertaken "for the benefit of" corporate defendants); *J.H. v. Archdiocese of N.Y.*, 2023 WL 5227786, at *4 (N.Y. Sup. Ct. Aug. 14, 2023) (sexual abuse unrelated to furtherance of defendant's business insufficient for § 302(a)(1)).

Plaintiff attempts to base jurisdiction on AMCI's alleged connection to the Property and the allegation that Plaintiff was paid from an account purportedly associated with AMCI. (Pltf. AMCI Opp. 7–8; SAC ¶¶ 69–70.) But the SAC expressly alleges that Kundrun "owned and

operated" the Property. (SAC ¶ 40.) Jurisdiction must be established as to each defendant individually; generalized references to "Defendants" do not suffice. *See Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980). Nor does the alleged payment of wages from an AMCI-related account establish that AMCI transacted business in New York in a manner giving rise to Plaintiff's claims. The mere transmission of funds into New York, without more, does not constitute the transaction of business under § 302(a)(1). See *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 475 (S.D.N.Y. 1998). In any event, Plaintiff's claims do not arise from any alleged wage payment; they arise from the alleged sexual assault. There is no articulable nexus between any purported financial transaction and the tort claims asserted.

Accordingly, § 302(a)(1) does not confer jurisdiction.

*ii.        CPLR § 302(a)(2): Tortious Act Within the State*

Section 302(a)(2) provides jurisdiction over a defendant who "commits a tortious act within the state." CPLR § 302(a)(2). This provision is construed strictly and applies only where the defendant itself was physically present in New York when committing the alleged tort. *See Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28–29 (2d Cir. 1997).

Plaintiff does not allege that AMCI itself committed any tortious act in New York. The alleged sexual assault was committed by Albarran, an individual. While jurisdiction may in limited circumstances be predicated on the in-state acts of an agent, that requires plausible allegations that the agent acted for the defendant's benefit and with its knowledge and consent. See *Edwardo*, 66 F.4th at 74. The SAC does not plausibly allege that the alleged assault was undertaken for AMCI's benefit, within the scope of AMCI's corporate business, or with AMCI's knowledge or authorization. Sexual assault is not conduct that furthers corporate interests, and there are no

nonconclusory allegations that AMCI directed or approved such conduct. Accordingly, § 302(a)(2) is not satisfied.

  *iii.  CPLR § 302(a)(3): Out-of-State Tort Causing In-State Injury*

  Section 302(a)(3) applies only where a defendant commits "a tortious act without the state causing injury to person or property within the state," and it imposes additional foreseeability and revenue requirements. N.Y. C.P.L.R. § 302(a)(3); *Best Van Lines*, 490 F.3d at 246–47. Plaintiff's allegations do not fall within this framework. The SAC alleges that the sexual assault occurred at 106 Tripp Street in Mount Kisco, New York. (SAC ¶¶ 6, 103.) If the tortious conduct occurred in New York, then the injury likewise occurred in New York. Section 302(a)(3) applies only to torts committed outside the state that cause injury inside the state. Because Plaintiff alleges an in-state tort, § 302(a)(3) is inapplicable as a matter of law.

  Because none of the provisions of New York's long-arm statute is satisfied, the jurisdictional inquiry ends there. Where the long-arm statute does not confer personal jurisdiction, the Court need not reach the constitutional due process analysis. *See Smart Shoppers NY LLC v. Tylers Coffee LLC*, No. 22 Civ. 4969, 2024 WL 113731, at *5 (S.D.N.Y. Jan. 10, 2024).

**II.  Even If Personal Jurisdiction Existed Over the AMCI Defendants, the Negligence-Based Claims Against Kundrun and the AMCI Defendants Would Still Be Dismissed.**

  Plaintiff asserts three negligence-based causes of action against Kundrun and the AMCI Defendants: (1) negligence; (2) negligent infliction of emotional distress ("NIED"); and (3) negligent hiring, retention, and supervision ("NHRS"). (SAC ¶¶ 139–176.) Even if the Court had personal jurisdiction over the AMCI Defendants, these claims would still fail for substantially the reasons set forth in the Court's prior Opinion. (*See generally* Former Opinion.)

### A. Negligence

A claim is duplicative where it arises from the same operative facts, alleges the same breach, and seeks the same damages as another cause of action. See *Mitchell v. Am. Arb. Ass'n*, 2018 WL 10419732, at *3 (S.D.N.Y. May 17, 2018) (dismissing duplicative claim based on same conduct and injury); *Ningbo Yang Voyage Textiles Co. v. Sault Trading*, 2019 WL 5399973, at *7 (E.D.N.Y. Sept. 10, 2019) (claims duplicative where predicated on identical factual allegations and relief sought). The Court previously held that Plaintiff's negligence claim was duplicative because it rested entirely on the same alleged supervisory failures underlying NHRS and sought identical damages. (Former Opinion at 11–12.)

The SAC still does not remedy that defect. Plaintiff again alleges that Defendants breached their duty by failing to properly hire, supervise, retain, discipline, and control Albarran, and by failing to prevent the alleged assault. (SAC ¶¶ 140–147.) The damages sought under negligence mirror those sought under NHRS. (Id. ¶ 153; compare ¶ 165.) Both claims rest on the same theory—that Defendants failed to supervise or remove Albarran before the alleged assault occurred.

Plaintiff argues that negligence is distinct because Kundrun owed him duties as a landowner and employer to maintain a safe premises for invitees and employees. (Pltf. AMCI Opp. at 19–23.) That reframing does not transform the claim into a distinct cause of action. The Court already rejected this identical attempt to recast supervision allegations as premises liability where the factual predicate remained unchanged. (Former Opinion at 11–12.) Nor does the SAC identify any independent premises defect. The newly added allegations—sexually explicit jokes directed at "Oscar," nude swimming, cancellation of the hotel reservation, entry into Plaintiff's bedroom, photographing, Albarran's alleged prior harassment of other employees, and alleged sexual

14

escalation—are pleaded to establish foreseeability and notice. (SAC ¶¶ 64–66, 79–85, 94–100, 108–109.) They do not describe a dangerous physical condition of the Property, prior similar criminal incidents, or any security deficiency. Where the alleged danger is the employee himself, rather than a physical defect on the premises, New York courts treat the claim as one for negligent supervision rather than premises liability. *See Wilson v. Diocese of N.Y. of Episcopal Church*, 1998 WL 82921, at *6 (S.D.N.Y. Feb. 26, 1998) (holding that a premises liability theory was "simply a repackaging" of a negligent supervision claim under similar facts).

Plaintiff's further argument—that negligence cannot be duplicative if NHRS is dismissed—misapprehends the basis of dismissal. (Pltf. Kundrun Opp. at 13–14.) The Court dismissed negligence because it was factually coextensive with NHRS, not because NHRS survived. (Former Opinion at 11–12.) Duplicativeness turns on factual overlap, not on whether the parallel claim ultimately proceeds. *See Mitchell*, 2018 WL 10419732, at *3; *Ningbo*, 2019 WL 5399973, at *7. Accordingly, the negligence claim remains factually coextensive with NHRS and must be dismissed with prejudice against both Defendants.

### B. Negligent Infliction of Emotional Distress

A Negligent Infliction of Emotional Distress ("NIED") claim requires the breach of a duty owed directly to the plaintiff that unreasonably endangered his physical safety or caused emotional harm with sufficient indicia of genuineness. *See Hiralall v. Sentosacare, LLC*, 2016 WL 1126530, at *15 (S.D.N.Y. Mar. 18, 2016). The Court previously dismissed the NIED claim because it rested on the same alleged supervisory failures as Plaintiff's other negligence-based claims and sought the same relief. (Former Opinion at 9–10.)

The SAC does not cure that defect. The NIED claim again alleges that Defendants' failure to properly hire and supervise Albarran caused Plaintiff emotional distress. (SAC ¶¶ 168–170.) It

incorporates the same factual allegations supporting NHRS, including the alleged prior harassment of Oscar, nude swimming, cancellation of the hotel reservation, entry into Plaintiff's room, photographing, and escalation leading to assault. (*Id*. ¶¶ 64–66, 79–85, 94–100, 108–109.) It also seeks the same compensatory and punitive damages. (*Id*. ¶¶ 173–174.)

Plaintiff contends that NIED is distinct because it does not require "extreme and outrageous conduct." (Pltf. AMCI Opp. at 25.) That argument conflates negligent and intentional infliction of emotional distress. The issue is not whether NIED differs from an intentional tort in the abstract, but whether Plaintiff pleads a separate negligent breach of duty here. *See Mitchell*, 2018 WL 10419732, at *3 (dismissing duplicative emotional distress claim); *Ningbo Yang*, 2019 WL 5399973, at *7 (same). Here, the emotional harm alleged flows directly from the same asserted failure to supervise and retain Albarran. The SAC identifies no independent duty directed specifically at Plaintiff's emotional well-being, no distinct negligent act, and no new theory of causation.

Because the NIED claim is factually and remedially coextensive with NHRS, it remains duplicative and must be dismissed with prejudice against both AMCI Defendants and Kundrun.

## C. Negligent Hiring, Retention, and Supervision

To state a negligent hiring, retention, or supervision claim under New York law, Plaintiff must plausibly allege: (1) the existence of an employment relationship; (2) that Defendants knew or should have known of the employee's propensity for the conduct that caused the injury; and (3) a causal nexus between the negligent supervision and the injury. *See Doe v. Indyke*, 465 F. Supp. 3d 452, 468 (S.D.N.Y. 2020). To establish notice, the prior misconduct must be sufficiently similar to the conduct that caused Plaintiff's injury. *See Doe v. Alsaud*, 12 F. Supp. 3d 674, 681 (S.D.N.Y.

2014) (notice must concern misconduct "of the same kind"). Absent such similarity, notice cannot be established as a matter of law.

The Court previously held that Plaintiff failed to plausibly allege notice of a propensity to commit sexual assault and expressly rejected the theory that a propensity to sexually harass equates to a propensity to sexually assault. (Former Opinion at 13-14.) The SAC attempts to address that deficiency by alleging an escalating pattern of misconduct: sexually explicit jokes about "Oscar" in 2007 or 2008; nude swimming in the presence of workers; use of AMCI email to inquire about Plaintiff's relationship status; cancellation of Plaintiff's hotel reservation and instruction that he stay on the Property; entry into Plaintiff's bedroom after he showered; photographing him; and an alleged history of sexually *harassing* past employees. (SAC ¶¶ 64–66, 74–95, 108–109.)

Even taken as true, these allegations describe inappropriate and harassing conduct, not prior sexual assault, attempted assault, or comparable violent sexual misconduct. Courts consistently distinguish between harassment and violent sexual assault in the foreseeability analysis. *See Alsaud*, 12 F. Supp. 3d at 681–83 ("prior sanctions against supervisor for sexually harassing other employees by attempting to date them did not establish his propensity to commit sexual assault"); *see also LaFrantz v. St. Mary's Roman Cath. Church,* 2024 WL 216718, *5 (E.D.N.Y. Jan. 19, 2024) (dismissing negligent hiring, retention or supervision claim where "[p]laintiff has failed to allege any prior sexual *abuse*" against the employee).

Plaintiff's escalation theory does not solve that problem. (Pltf. AMCI Opp. 11-15.) Even if the alleged conduct progressed from offensive remarks to intrusive behavior, the law requires notice of sufficiently similar misconduct—not generalized awareness of impropriety. *See Alsaud*, 12 F. Supp. 3d at 681–83. That conclusion follows from the absence of any alleged prior assaultive

17

conduct. Holding otherwise would blur the distinction New York law draws between prior harassing conduct and notice of a propensity to commit sexual assault.

Nor does the SAC plausibly allege actual or constructive knowledge of assault-level misconduct. Assertions that Kundrun or the corporate defendants "knew or should have known" based solely on conduct occurring on the Property or use of company email are conclusory. (Pltf. AMCI Opp. 11-15.) The SAC does not allege that Defendants received complaints of sexual assault prior to the incident, witnessed assaultive conduct, or were aware of behavior approaching rape. As the Court previously observed, conclusory assertions of constructive notice are insufficient under *Iqbal*. *Britton v. Bronx Parent Hous. Network, Inc.*, 2022 WL 4332735, *3 (S.D.N.Y. Sept. 19, 2022); (Former Opinion at 16–17.) Those additional allegations do not change the analysis.

Plaintiff argues that foreseeability is generally a jury question. (Pltf. AMCI Opp. at 18– 20.) But foreseeability becomes a fact issue only after a plaintiff plausibly alleges notice of sufficiently similar prior conduct. Where the alleged prior acts are qualitatively different from the injury-producing conduct, dismissal at the pleading stage is appropriate. *See Alsaud*, 12 F. Supp. 3d at 681–83. The SAC alleges no prior sexual assault, no attempted assault, no criminal complaint, and no facts suggesting Defendants were aware of conduct approaching rape. Allegations of harassment, without more, do not plausibly establish notice of a propensity for violent sexual assault. A contrary rule would substantially weaken the notice requirement by treating any allegation of inappropriate behavior as sufficient to make sexual assault foreseeable. New York law does not go that far.

Because Plaintiff fails to allege nonconclusory facts establishing that Defendants knew or should have known of a propensity for the conduct that caused the injury, the NHRS claim fails as a matter of law and is dismissed with prejudice.

### III.    Leave to Amend

Plaintiff has already had multiple opportunities to amend. He filed an initial Complaint, a First Amended Complaint, and now a Second Amended Complaint. (ECF Nos. 1, 32, 75.) While "[t]he court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991), that standard has been satisfied here. The Court previously dismissed Plaintiff's negligence-based claims without prejudice and expressly identified the deficiencies that required correction. (*See* Former Opinion, ECF No. 73.) Plaintiff was granted leave to amend and filed the Second Amended Complaint, yet he still fails to allege facts plausibly establishing notice of a propensity for the type of conduct that caused his injury, or a distinct basis for his negligence and NIED claims. (*Id.*)

This is not a case in which further amendment would cure a technical pleading defect. Plaintiff has already received guidance from the Court and still has not cured the substantive deficiencies in these claims. The SAC repeats, in slightly expanded form, the same supervisory and foreseeability allegations the Court previously found insufficient. Even under a liberal construction, the SAC does not provide additional nonconclusory facts that would render the negligent hiring, retention, or supervision claim plausible, nor does it articulate a separate, non-duplicative basis for negligence or NIED.

Because Plaintiff has already amended multiple times and still has not cured the deficiencies identified by the Court, further leave to amend would be futile. Dismissal is therefore with prejudice.

**CONCLUSION**

For the foregoing reasons, the Court grants the motions of Defendants Fritz Kundrun, American Metals & Coal International, Inc., and AMCI Holdings, Inc. to dismiss Plaintiff's claims for negligence, negligent hiring, retention or supervision, and negligent infliction of emotional distress.  Those claims are dismissed with prejudice, as amendment would be futile. The claims asserted against Defendant Juan Albarran — including assault, battery, and intentional infliction of emotional distress — remain pending, as Albarran did not move to dismiss those claims. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 99 and 104 and to terminate Defendants Fritz Kundrun, American Metals & Coal International, Inc., and AMCI Holdings, Inc.

Dated: March 11, 2026
White Plains, New York

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge